UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

EDWIN FIGUEROA,                      :

                 Plaintiff,     :     12 Civ. 4115 (HBP)

     -against-                       :

                                      OPINION
MRM WORLDWIDE,                  :     AND ORDER

                 Defendant.     :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


I.  Introduction


          Pro se plaintiff Edwin Figueroa brings this employment

discrimination action, pursuant to Title VII of the Civil Rights

Act of 1964 ("Title VII") against defendant MRM Worldwide (Com-

plaint for Employment Discrimination, dated May 23, 2012 (Docket

Item 2)).  Plaintiff alleges that defendant discriminated against

him by denying him a promotion and wrongfully terminating him on

the basis of plaintiff's race.  Plaintiff also alleges that he

has been the victim of illegal retaliation.  By notice of motion,

dated May 31, 2013 (Docket Item 23), defendant moves for summary

judgment dismissing the complaint.  Defendant argues that plain-

tiff knowingly and voluntarily signed an agreement releasing his

Title VII claims.  Plaintiff opposes the motion on the ground
that he signed the agreement under duress (Docket Item 29).

        The parties have consented to my exercising plenary
jurisdiction over this action pursuant to 28 U.S.C. § 636(c)
(Notice, Consent, and Reference of a Civil Action to a Magistrate
Judge, dated October 16, 2012 (Docket Item 19)).  For the reasons
set forth below, defendant's motion for summary judgment is
granted and the complaint is dismissed.

II.  <u>Facts</u>

    A.  <u>Factual Background</u>

        Plaintiff is a Hispanic male (Docket Item 2).  He
graduated from the School of Visual Arts in 1979, with a bachelor
of arts degree in media and advertising (Tr. of Deposition of
Edwin Figueroa, dated April 18, 2013 ("Figueroa Dep."), at 7-8,
annexed as Exhibit A to the Declaration of Michael Marra, Esq.,
dated May 30, 2013 ("Marra Decl.") (Docket Item 27)).  Upon
graduating, plaintiff worked at various advertising, media and
publishing companies, shifting back and forth between permanent
and freelance positions (Figueroa Dep. at 13-16, 20-21, 30, 32).
He also worked for Citigroup Global Markets for eight years,
assisting the company with internal publications (Figueroa Dep.

2

at 24-25).  Plaintiff testified that, prior to his employment

with defendant, he had been laid off on two other occasions and

had received severance payments in connection with those lay-offs

(Figueroa Dep. at 23, 27-28).  Plaintiff also recalled signing a

release form in connection with one of those incidents (Figueroa

Dep. at 29; see Citigroup Separation Agreement and Release, dated

February 15, 2005, annexed as Exhibit C to Marra Decl. (Docket

Item 27)).

     From July 22, 2008 to February 9, 2011, plaintiff

worked as a studio specialist for defendant, first as a temporary

employee and then, starting October 6, 2008, as a permanent

employee (see Screenshots of PeopleSoft System, printed on June

18, 2012, annexed as Exhibits A and B to the Affidavit of

Katerina Lagis, dated May 31, 2013 ("Lagis Aff.") (Docket Item

26)).  Plaintiff worked in the second night shift (Docket Item

2).  In 2009, he received a year-end overall performance rating

of "significant contributor," the second best rating used by

defendant (Year End Performance Assessment, dated February 6,

2009, annexed as Exhibit F to Opposition to Defendant of Memoran-

dum of Law Against its Motion for Summary Judgment, dated June

20, 2013 ("Opp'n") (Docket Item 29)).

     On November 15, 2010, plaintiff's supervisor, Gregg

Ward, placed plaintiff on probation for thirty days (Corrective

Action Memo, dated November 15, 2010, annexed as Exhibit C to
Lagis Aff. (Docket Item 26)).  Among other things, Ward noted
that plaintiff had received "increasingly frequent and negative
feedback regarding [plaintiff's] attitude and willingness to be a
team player" from individuals in "several departments" (Lagis
Aff., Ex. C).  Under a section designated for "employee com-
ments," plaintiff noted that he was "guilty as charged, and
[would] definitely try harder" (Lagis Aff., Ex. C).  Defendant
removed plaintiff from probation on December 22, 2010 (Figueroa
Dep. at 177).

        Plaintiff's 2010 performance review noted the foregoing
probationary period.  It also noted that plaintiff's co-workers
had complained of plaintiff's "aggressive attempts at pointing
out their errors" and that plaintiff's productivity had decreased
(2010 Performance Review, printed on January 26, 2011, annexed as
Exhibit D to Lagis Aff. (Docket Item 26)).  Ward described
plaintiff's performance toward the end of 2010 as "dismal" (Lagis
Aff., Ex. D).  Indeed, during his deposition, plaintiff identi-
fied at least ten instances where he had attempted to correct the
actions of his co-workers and "red flagged" these mistakes to
Ward and his shift supervisor, Leo Liz (see Figueroa Dep. at 108-
19, 122-45, 156-72; Opposition to Defendant Local Civil Rule 56.1
Statement of Undisputed Material Facts, dated June 20, 2013

4

("Pl.'s 56.1") (Docket Item 28), ¶ 13).  Plaintiff also testified that, after the probationary period ended, he had uttered expletives in the presence of a co-worker out of frustration and anger at Liz (Figueroa Dep. at 136, 192-93).  Plaintiff's remarks were thereafter relayed to Liz (Figueroa Dep. at 137, 139, 143).

On or about February 7, 2011, plaintiff attended a meeting with Ward, Ken Post, who was Ward's superior, and Katerina Lagis, director of the human resources department (Figueroa Dep. at 172, 197-98; see E-mail from Ward to Ward, dated February 8, 2011 (memorializing meeting), annexed as Exhibit F at 42 to Opp'n).  During this meeting, defendant informed plaintiff that he was being terminated (Figueroa Dep. at 172, 196).  Plaintiff testified that the news of his termination "blindsided" him and plaintiff attempted to explain to his supervisors that certain events had been misunderstood (Figueroa Dep. at 172, 185).  During the meeting, Post informed plaintiff that plaintiff could submit an e-mail to the group informing them of plaintiff's version of the events (Figueroa Dep. at 196, 198).  Plaintiff accepted this offer and transmitted an e-mail to his supervisors, dated February 15, 2011, in which he attempted to explain, among other things, why he had uttered expletives with respect to Liz (E-mail from Edwin Figueroa to Lagis, Ward and Post, annexed as Exhibit F to Marra Decl.; see Figueroa Dep. at

5

198).  Plaintiff was under the belief that defendant would res-
pond to his e-mail, but defendant did not (Figueroa Dep. at 198-
99, 213).

        In connection with his termination, defendant provided
plaintiff with a document, titled "Confidential Separation
Agreement and General Release" (the "Agreement and Release")
during the February 7, 2011 meeting (Figueroa Dep. at 215; see
Lagis Aff., Ex. E).  The Agreement and Release states, in perti-
nent part, the following:

> CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL
> RELEASE between MRM Worldwide ("Employer") and Edwin
> Figueroa ("Employee"). . . . [T]he parties agree as
> follows:
>
> 1.  Termination of Employment.  Employee has been
> terminated from any and all positions that he/she holds
> at Employer or any subsidiary thereof effective Febru-
> ary 9, 2011.
>
>                 *     *     *
>
> 2.  Severance Payment and Benefits.  Subject to
> Employee's execution and non-revocation of, and compli-
> ance with this Agreement, Employer shall pay to Em-
> ployee a lump sum of Four Thousand Thirty Eight Dollars
> and Forty Six Cents ($4,038.46) . . . .
>
> The above-referenced payment is in full satisfac-
> tion of any and all claims Employee may have against
> Employer, and exceeds in value any payments to which
> Employee may otherwise be entitled.
>
> 3.  Release of Claims.  By signing this Agreement
> and Release, Employee . . . hereby fully and without
> limitations releases . . . Employer . . . from all
> rights, claims, demands, liabilities, actions and

6

causes of action . . . of whatever nature whatsoever
that Employee now has or has ever had, whether known or
unknown or based on facts known or unknown against
[Employer] . . . that arise out of or are in any way
related to Employee's employment by Employer or the
termination of Employee's employment with Employer.

. . . Employee understands and agrees that the
foregoing release provisions include, without limita-
tion:

        a.  any claims for wrongful termination
. . .;

        c.  any claims of discrimination, harassment,
or retaliation based on such things as age, na-
tional origin, ancestry [or] race . . .;

        d.  all claims that Employee has . . . in-
cluding but not limited to any claim or cause of
action based on . . . Title VII of the Civil
Rights Act of 1964 . . . .

                    *     *     *

    4.  <u>Attorney Review</u>.  Employee is hereby advised
that he/she should consult with an attorney prior to
executing this Agreement.

    5.  <u>Review Period</u>.  Employee is also advised that
he/she has twenty-one (21) days from the date this
Agreement is delivered to him/her within which to
consider whether he/she will sign it, and to the extent
he/she executes it before the expiration review period,
he/she has done so knowingly and voluntarily.

    In order to receive the termination payment de-
scribed in Paragraph 2 above, Employee must sign, date
and return this Agreement and Release to Employer (c/o
Katerina Lagis, 622 Third Avenue, NY, NY 10017) not
later than 21 days, as applicable, after agreement is
given to employee . . . .

    6.  <u>Revocation Period</u>.  If Employee signs this
Agreement, he/she acknowledges that he/she understands

that he/she may revoke this Agreement within seven (7)
days after he/she has signed it by notifying Employer
in writing that he/she has revoked this Agreement.

\*   \*   \*

        HAVING READ AND UNDERSTOOD THE RELEASE, CONSULTED
COUNSEL OR VOLUNTARILY ELECTED NOT TO CONSULT COUNSEL,
AND HAVING HAD SUFFICIENT TIME TO CONSIDER WHETHER TO
ENTER INTO THIS AGREEMENT AND RELEASE, THE PARTIES
HERETO HAVE EXECUTED THIS AGREEMENT AND RELEASE AS OF
THE DAY AND YEAR FIRST WRITTEN BELOW.

(Lagis Aff., Ex. E).  In accordance with the provisions in the
Agreement and Release, plaintiff was permitted to take the
document home for further review.

        Plaintiff testified, at his deposition, that he under-
stood the terms of the Agreement and Release (Figueroa Dep. at
238-50).  However, plaintiff also testified that he had not read
the terms prior to signing Agreement and Release and, thus, had
not understood the terms at that time (Figueroa Dep. at 34 ("I
kind of, like, glanced over it"); 242 ("at the time of signing, I
didn't read this"); 246).  Plaintiff conceded that he had under-
stood the provisions concerning his severance payment and testi-
fied that he had "really needed that money" as a result of his
termination (Figueroa Dep. at 248-50).

        Plaintiff contends that he spoke with Lagis twice prior
to returning the executed Agreement and Release.  During the
first telephone conversation, plaintiff called Lagis to inquire

whether defendant had received his e-mail, dated February 15, 2011, and to request that defendant respond to that e-mail (Figueroa Dep. at 256-57; see Marra Decl., Ex. E).  Plaintiff provided conflicting testimony regarding the remainder of his conversation with Lagis.  For example, plaintiff was unsure whether the two had discussed his severance payment during the conversation (compare Figueroa Dep. at 257 ("I also asked her would [the e-mail] affect the check" with 260 ("I don't think I brought up the check").  When questioned about his conflicting statements, plaintiff explained, "what happened in my mind, and what was actually said are two different things" (Figueroa Dep. at 260).  Further, plaintiff testified that Lagis had informed him that he would receive a response to his e-mail if he returned the Agreement and Release, signed, to defendant (Figueroa Dep. at 261).  However, when asked directly whether Lagis had made the foregoing statement, plaintiff testified "[s]he didn't [say that] in that many words . . . .  In my frame of mind, I was hearing what I wanted to hear, pretty much" (Figueroa Dep. at 264).  In fact, plaintiff testified that he was so "dazed" during his conversation with Lagis, that he called her again before mailing the signed Agreement and Release (Figueroa Dep. at 265 ("I was still, like, in a daze and not really focused on everything.")).

Plaintiff testified that he spoke with Lagis a second time on February 18, 2011, using a public payphone near a post office (Figueroa Dep. at 265-66).  Plaintiff purportedly dialed the wrong number and reached a different individual at MRM Worldwide who then transferred his call to someone plaintiff was "almost sure" was Lagis (Figueroa Dep. at 267-68; see 269 ("I'm almost sure it was her)).  During this conversation, plaintiff purportedly asked, "if I send the agreement, will somebody call me," and, according to plaintiff, Lagis answered in the affirmative (Figueroa Dep. at 269-70).  While the severance payment played some role in his decision to sign the Agreement and Release, plaintiff testified that Lagis' statement that somebody would listen to him "made" him finally sign and send the Agreement and Release to defendant (Figueroa Dep. at 270).

Lagis submits an affidavit, in which she states the following, with respect to plaintiff's testimony:

> I never had any such conversation(s) with Mr. Figueroa. Mr. Figueroa did not ask me, in words or substance, whether I would get someone to call him if he returned his Confidential Separation Agreement and General Release; and I never told him that I would get someone to so call him.

> Messrs. Landsberg, Mitchell and Post were each senior to me, and I would never promise (and never did promise) to get any of them to take any action. . . . Moreover, my role in Human Resources did not confer upon me any authority to cause Mr. Ward (or any of the officers listed herein) to contact Mr. Figueroa, nor

> would I ever promise anyone that I would do so.  I
> never made any such promises to Mr. Figueroa.

(Lagis Aff. ¶¶ 12, 13).

Plaintiff executed and mailed the Agreement and Release to defendant on February 18, 2011 (Figueroa Dep. at 237; Lagis Aff., Ex. E).  He received his severance payment in the form of a check in the amount of $2,233.17,[1] which he cashed on March 16, 2011 (Lagis Aff., Ex. F; Figueroa Dep. at 293-94).  Plaintiff did not ever exercise his right to revoke the Agreement and Release (Figueroa Dep. at 250).

B.  Procedural Background

Plaintiff filed a claim against defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race and age in violations of Title VII and the Age Discrimination in Employment Act ("ADEA") (Complaint at 5).  On April 26, 2012, the EEOC issued plaintiff a notice of dismissal and right to sue letter (Complaint at 6).[2]

_____

[1]The amount plaintiff received represented three weeks' salary ($4,038.46), less required federal, state and local withholdings (Lagis Aff., Ex. E ¶ 2).

[2]Plaintiff does not assert any claims under the ADEA in this lawsuit.

11

III.  <u>Analysis</u>

A.  <u>Summary Judgment Standards</u>

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To grant the motion, the court must determine that there is no genuine issue of material fact to be tried.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505.  The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); <u>see</u> <u>also</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).  It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill
v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City
of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l
Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

       "Material facts are those which 'might affect the out-
come of the suit under the governing law,' and a dispute is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'" Coppola v. Bear
Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.
2007).  "'[I]n ruling on a motion for summary judgment, a judge
must ask himself not whether he thinks the evidence unmistakably
favors one side or the other but whether a fair-minded jury could
return a verdict for the [non-movant] on the evidence pre-
sented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778,
788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank,
81 F.3d 295, 298 (2d Cir. 1996); see Lujan v. Defenders of
Wildlife, 504 U.S. 555, 590 (1992) ("This Court's 'function is
not [it]self to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial.'" (citation omitted)).

B.  Application of the
    Foregoing Principles

    1.  Knowing and
        Voluntary Release

"Under Title VII, an employee may validly waive a claim of discrimination so long as the waiver is made 'knowingly and willfully.'"  Bormann v. AT&T Commc'ns, 875 F.2d 399, 402 (2d Cir. 1989) (citation omitted) (affirming district court's dismissal of a complaint alleging age discrimination due to release); see Fletcher v. Palazzo, 151 F. App'x 73, 75 (2d Cir. 2005) (summary order; affirming magistrate judge's dismissal of a Title VII race-based complaint due to plaintiff's valid and knowing release).  In determining whether an employee agreed to waive his/her legal rights "knowingly, willfully and free from coercion," a district court must employ a "totality of the circumstances" standard.  Bormann v. AT&T Commc'ns, supra, 875 F.2d at 403.  The following non-exhaustive list of factors is relevant to the inquiry:

> 1) the plaintiff's education and business experience,
> 2) the amount of time the plaintiff had possession of
> or access to the agreement before signing it, 3) the
> role of plaintiff in deciding the terms of the agree-
> ment, 4) the clarity of the agreement, 5) whether the
> plaintiff was represented by or consulted with an
> attorney, and 6) whether the consideration given in
> exchange for the waiver exceeds employee benefits to

14

which the employee was already entitled by contract or
law.

Bormann v. AT&T Commc'ns, supra, 875 F.2d at 403 (citation
omitted).  Additional factors include "whether an employer
encourages or discourages an employee to consult an attorney" and
"whether the employee had a fair opportunity to do so."  Bormann
v. AT&T Commc'ns, supra, 875 F.2d at 403 (citation omitted).
"[T]he absence of single factor is not necessarily dispositive."
Laniok v. Advisory Comm. of the Brainerd Mfg. Co. Pension Plan,
935 F.2d 1360, 1368 (2d Cir. 1991), citing Bormann v. AT&T
Commc'ns, supra, 875 F.2d at 403 n.1; accord Fletcher v. Palazzo,
supra, 151 F. App'x at 75 ("all factors need not be met or
considered"); see Drees v. Cnty. of Suffolk, 06-CV-3298, 2009 WL
875530 at *3 (E.D.N.Y. Mar. 30, 2009) ("not every factor must be
in defendants' favor for the release to be found knowing and
voluntary" (citation omitted)); Bachiller v. Turn On Prods.,
Inc., 00 Civ. 8701 (JSM), 2003 WL 1878416 at *4 (S.D.N.Y. Apr.
14, 2003) (Martin, D.J.) ("These factors are not exhaustive, nor
must they all be satisfied." (citation omitted)), aff'd, 86 F.
App'x 465 (2d Cir. 2004).

15

a. Education and
   Business Experience

There is no dispute that plaintiff is well-educated and
has extensive business experience.  Plaintiff testified that he
attended the School of Visual Arts on a scholarship and graduated
in 1979 with a Bachelor of Arts degree (Figueroa Dep. at 7-11;
see Pl.'s 56.1 ¶¶ 1, 2).  Plaintiff also testified to approxi-
mately thirty years' worth of work experience with a variety of
companies (Figueroa Dep. at 11-33; see Pl.'s 56.1 ¶ 2).  In
connection with his work experience, plaintiff had previously
received severance payments on two occasions and executed a
release in one of those instances (Figueroa Dep. at 27-29; see
Pl.'s 56.1 ¶¶ 3, 4).

In light of plaintiff's educational background and work
experience, plaintiff was capable of, and during his deposition
conceded to, understanding the terms of the Agreement and Re-
lease.  See Dewey v. PTT Telecom Neth., U.S., Inc., 94 Civ. 5983
(HB), 1995 WL 542447 at *2 (S.D.N.Y. Sept. 12, 1995) (Baer, D.J.)
(Based on plaintiff's college degree and twenty-plus years of
work experience, plaintiff "should have understood the conse-
quences of signing the Release."), aff'd, 1996 WL 364531 (2d Cir.
July 2, 1996).

Accordingly, this factor favors the defendant.

16

b.   <u>Access to Agreement</u>

There is also no dispute regarding the amount of time plaintiff had possession of or access to the Agreement and Release before signing it.  Plaintiff testified that defendant provided him with the Agreement and Release on February 7, 2011, the date on which defendant terminated plaintiff (Figueroa Dep. at 215; <u>see</u> Pl.'s 56.1 ¶ 37).  Although plaintiff was permitted twenty-one days to review it, pursuant to the terms of the Agreement and Release (Lagis Aff., Ex. E ¶ 5), plaintiff executed and mailed the Agreement and Release to defendant on February 18, 2011 (Figueroa Dep. at 237; <u>see</u> Pl.'s 56.1 ¶ 42).  Plaintiff's opportunity to review the agreement was sufficient.  <u>See Mandavia v. Columbia Univ.</u>, 12 Civ. 2188 (JPO), 2013 WL 2391695 at *7 (S.D.N.Y. June 3, 2013) (Oetken, D.J.) ("a few hours" were sufficient to satisfy the second <u>Bormann</u> factor); <u>Dewey v. PTT Telecom Neth., U.S., Inc.</u>, <u>supra</u>, 1995 WL 542447 at *2 (four days sufficient time to review separation agreement).

Hence, this factor weighs in favor of the defendant.

17

c.  Role of Plaintiff

There is no evidence to suggest that plaintiff played a role in negotiating or drafting the terms in the Agreement and Release.

This factor, thus, weighs against the defendant.

d.  Clarity of
Agreement

There is no dispute regarding the clarity of the Agreement and Release.  Plaintiff does not allege that the terms in the Agreement and Release are ambiguous.  Rather, plaintiff argues that he did not understand the terms of the Agreement and Release prior to signing it because he had not read it at that point (Figueroa Dep. at 242; see Pl.'s 56.1 ¶ 40).  That plaintiff did not carefully review the terms prior to signing the Agreement and Release does not render it unclear, unknowing or involuntary.  See Rivera v. Sovereign Bank, 11-CV-1618 (NGG)(VMS), --- F. Supp. 2d ---, 2013 WL 5502865 at *7 (E.D.N.Y. Sept. 30, 2013) (adopting report & recommendation and granting defendant's motion for summary judgment in light of release in separation agreement, despite plaintiff's testimony that she did not read the document prior to signing it).  In evaluating the totality of the circumstances, "a court need not disregard a

18

plaintiff's knowing failure to read and understand the agree-
ment." Aylaian v. Town of Huntington, 459 F. App'x 25, 27 (2d
Cir. 2012) (summary order).  "The common law . . . is unequivocal
that, absent fraud or misrepresentation, the uninformed signer of
an agreement is bound." Aylaian v. Town of Huntington, supra,
459 F. App'x at 27 (citations omitted); see also Consol. Edison
Co. of N.Y., Inc. v. United States, 221 F.3d 364, 371 (2d Cir.
2000) (collecting cases).

        Moreover, the provisions of the Agreement and Release
are clear and unambiguous.  The document sets forth the termina-
tion, severance payment, release, attorney review and review
period provisions on the first two pages and each section is
separately numbered and titled (Lagis Aff., Ex. E).  It plainly
informs plaintiff that if he signs the document, he will be
barred from bringing employment claims against the defendant,
including claims under Title VII.  See Dewey v. PTT Telecom
Neth., U.S., Inc., supra, 1995 WL 542447 at *2 (Release was
unambiguous because defendant used "clear and simple language.").
Indeed, during his deposition, plaintiff conceded that he under-
stood each of the relevant provisions (Figueroa Dep. at 238-50).

        Accordingly, this factor weighs in defendant's favor.

e.   Legal Consultation

Neither party disputes that although the Agreement and Release advised plaintiff to consult with an attorney, plaintiff did not do so of his own volition (Figueroa Dep. at 246 ("I should have had an attorney read this"); 247 ("[The provision] means to me that I should have had an attorney read this . . . they advised me to consult an attorney")).

Thus, this factor also favors the plaintiff.

f.   Consideration

Plaintiff does not challenge the fact that he received consideration in the amount of $2,233.17 in exchange for signing the Agreement and Release (Figueroa Dep. at 293-95; see Lagis Aff., Ex. F; Pl.'s 56.1 ¶ 43).  Plaintiff understood the payment was a severance payment and that he would not have received the payment without executing the Agreement and Release (Figueroa Dep. at 247-48).  Nor does plaintiff dispute that, under the terms of the Agreement and Release, the payment exceeded the value of benefits plaintiff might have otherwise been entitled to (Figueroa Dep. at 240; see Lagis Aff., Ex. E ¶ 2).

Because plaintiff was not otherwise entitled to the severance payment of three weeks' salary, which he understood he

was receiving in exchange for executing the Agreement and Re-
lease, see <u>Bachiller v. Turn On Prods.</u>, <u>supra</u>, 2003 WL 1878416 at
*4 (one week's vacation pay was sufficient consideration where
plaintiff understood he was not otherwise entitled to compensa-
tion), this factor weighs in favor of the defendant.

> g.  Encouragement and
>     <u>Fair Opportunity</u>

Finally, there is no genuine dispute on whether defen-
dant encouraged plaintiff to consult an attorney and whether
defendant provided plaintiff with a fair opportunity to do so.
The Agreement and Release plainly sets forth an enumerated
section titled and underlined "Attorney Review," which states, in
its entirety, "Employee is hereby advised that he/she should
consult with an attorney prior to executing this Agreement"
(Lagis Aff., Ex. E ¶ 4).  Following that section, is an enumer-
ated paragraph titled and underlined "Review Period," informing
plaintiff in two short paragraphs of a twenty-one day review
period (Lagis Aff., Ex. E ¶ 5).  The Agreement and Release also
provides the following at its conclusion and directly above
plaintiff's signature line in all capital letters:  "Having read
and understood the release, <u>consulted counsel</u> <u>or</u> <u>voluntarily</u>
<u>elected</u> <u>not</u> <u>to</u> <u>consult</u> <u>counsel</u>, and having had <u>sufficient</u> <u>time</u> to

21

consider whether to enter into this agreement and release, the parties hereto have executed this agreement and release as of the day and year first written below" (Lagis Aff., Ex. E at 6 (original in all caps; emphasis added)).

Indeed, plaintiff affirmed his understanding of the foregoing provisions during his deposition.  Plaintiff conceded that the Agreement and Release advised him to seek counsel (Figueroa Dep. at 246 ("I should have had an attorney read this"); 247 ("they advised me to consult an attorney")).  Plaintiff also testified that he understood the terms relating to the review period (Figueroa Dep. at 247-48).  Plaintiff has not alleged and nothing in the record raises an issue that defendant discouraged him from consulting with an attorney.  See Bachiller v. Turn On Prods., supra, 2003 WL 1878416 at *4.

These final factors also favor the defendant.

h.  Totality of the
    Circumstances

The factors overwhelmingly weigh in favor of the defendant.  Although plaintiff did not consult an attorney and played no role in drafting or negotiating the terms of the Agreement and Release, "not every factor must be in defendant['s] favor for the release to be found knowing and voluntary."  Drees

22

v. Cnty. of Suffolk, supra, 2009 WL 875530 at *3; see Fletcher v. Palazzo, supra, 151 F. App'x at 75; Laniok v. Advisory Comm. of the Brainerd Mfg. Co. Pension Plan, supra, 935 F.2d at 1368. Courts in this district have repeatedly upheld releases in similar circumstances.  See Dewey v. PTT Telecom Neth., U.S., Inc., No. 95-7838, 1996 WL 364531 at *3 (2d Cir. July 2, 1996) (affirming dismissal where "although [plaintiff] did not consult an attorney prior to signing the release, there is nothing to indicate that she did not have the opportunity to do so"); Bormann v. AT&T Commc'ns, Inc., supra, 875 F.2d at 403 n.1 (the fact that the plaintiff "did not have the opportunity to negoti- ate the terms of the waiver" did not alter the court's conclusion on the "voluntariness" of plaintiff's release of claims); see also Tung v. Texaco Inc., 150 F.3d 206, 208 (2d Cir. 1998) (per curiam) (affirming dismissal of plaintiff's Title VII claim even though plaintiff played no role in drafting a separation agree- ment); Bachiller v. Turn On Prods., supra, 2003 WL 1878416 at *4 ("The fact that Plaintiff signed the agreement immediately after her termination, that she did not have a role in deciding its terms and that she was not represented by counsel at the time she signed the agreement do not change the fact that the totality of the circumstances here overwhelmingly weigh in favor of upholding the validity of the Release.").

Accordingly, notwithstanding the fact that two factors weigh in favor of the plaintiff, the totality of the circumstances demonstrate that plaintiff executed the Agreement and Release knowingly and voluntarily.

2.  <u>Claim of Duress</u>

Considering the facts in the light most favorable to plaintiff, plaintiff's claim of duress cannot survive this motion.  "Under New York law, which governs, '[a] contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will.'" <u>First Nat. Bank of Cincinnati v. Pepper</u>, 454 F.2d 626, 632 (2d Cir. 1972), <u>quoting</u> <u>Austin Instrument, Inc. v. Loral Corp.</u>, 29 N.Y.2d 124, 130, 272 N.E.2d 533, 535, 324 N.Y.S.2d 22, 25 (1971); <u>accord</u> <u>Joseph v. Chase Manhattan Bank, N.A.</u>, 751 F. Supp. 31, 34 (E.D.N.Y. 1990).  Here, plaintiff claims that the Agreement and Release is invalid because defendant coerced him into signing it by falsely promising that defendant would respond to plaintiff's e-mail, dated February 15, 2011, in exchange for the executed document (<u>see</u> Opp'n ¶ 1A ("By [Lagis] promising me just that if I signed the release someone would contact me, she force [<u>sic</u>] my hand."); Affirmation of Edwin Figueroa in Support of my Memoran-

24

dum, dated June 20, 2013 (Docket Item 30) ¶¶ 15 ("I had signed it under duress and false pretense, believing an 'Implied Agreement' between me and Katerina, which was never honored."); 16 ("I really thought after sending in those papers, someone would listen to what I had to say.").  Plaintiff states that he was "so vulnerable and in daze" when he signed the Agreement and Release that he was under duress (Pl.'s 56.1 ¶ 32).

Even if a reasonable fact-finder were to credit plaintiff's testimony regarding the facts underlying his claim of duress and discredit Lagis' affidavit entirely, no reasonable juror could conclude that defendant's comments or conduct deprived plaintiff of his free will.  "To determine whether a party lacked a 'meaningful choice,' courts look for evidence of high pressure or deceptive tactics, as well as disparity in bargaining power."  Pallonetti v. Liberty Mut., 10 Civ. 4487, 2011 WL 519407 at *5 (S.D.N.Y. Feb. 11, 2011) (Sweet, D.J.), citing Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (Scheindlin, D.J.).  There is no evidence here that defendant used high pressure or deceptive tactics; nor is there any evidence of a wrongful threat.  Though plaintiff may have been faced with a difficult choice because he "really needed" the severance money (Figueroa Dep. at 249), the case law is clear that "difficult choices do not constitute duress."  Joseph v. Chase Man-

hattan Bank, N.A., supra, 751 F. Supp. at 34.  Here, at all times, "plaintiff was free to reject the terms of the agreement, which he did not."  Marshall v. Cooper, No. 98-9008, 1996 WL 425851 at *1 (2d Cir. June 10, 1999) (affirming dismissal). Accordingly, plaintiff's claim of duress is without merit and cannot void the otherwise valid Agreement and Release.

      3.  <u>Remaining Issues</u>

      Plaintiff alludes to several other arguments in his opposition papers.  Plaintiff contends that (1) Lagis made him an implied promise, which defendant later breached, (2) defendant failed to abide by its internal code of conduct and (3) defendant tampered with his mail (Opp'n ¶¶ 1A-C, 6A-C).  None of these allegations are relevant to whether plaintiff's release of claims was voluntary and knowing.  To the extent that the foregoing claims raise genuine issues of fact and have any bases whatsoever in the law, they are barred by the Agreement and Release (Lagis Aff., Ex. E ¶ 3), and are, thus, dismissed.

IV.  <u>Conclusion</u>

      For all the foregoing reasons, I grant defendant's

motion for summary judgment and dismiss the complaint in its

entirety.   The Clerk of the Court is directed to close docket

item 23.

Dated:  New York, New York
        March 7, 2014

                                SO ORDERED


                                _____
                                HENRY PITMAN
                                United States Magistrate Judge


Copies mailed to:

Mr. Edwin Figueroa
Apt. #3B
1523 Union Point Road
Bronx, New York  10462

Michael R. Marra, Esq.
Cooley LLP
1114 Avenue of the Americas
New York, New York  10036

27